THE GEORGIA RAILROAD AND BANKING CO. v. MURDEN.

Where a passenger boarded a railroad train at a flag-station, for the purpose of going to Augusta, and there was a dispute between him and the conductor as to the proper rate to be charged, and the conductor informed him that he could ride at four cents a mile to the next office where tickets were sold and could get off the train there and board it again, and might ride the rest of the way for three cents a mile, and the passenger agreed to this, paid the four cents a mile to the next station, got off the train for the purpose of procuring a ticket and could not do so because the ticket-office was closed, and then boarded the train again for the purpose of continuing his journey, and tendered the conductor three cents a mile, the latter had no legal right to put him off the train because he refused to pay four cents a mile, although he had received instructions to charge four cents a mile.

(a) A passenger is not presumed to know the private or secret rules given by a railroad company to its conductors, but has a right to rely upon their statement as to what the rules are, in contracting with them.

(b) The rule shown the passenger by the conductor in this case, did not put the passenger upon notice that the conductor had no right to make the agreement above mentioned.

December 23, 1890.

Railroads. Passengers. Agency. Before Judge LUMPKIN. Taliaferro superior court. February term, 1890.

Reported in the decision. For former report see 83 *Ga.* 753.

J. B. Cumming, M. P. Reese and Bryan Cumming, for plaintiff in error.

J. W. Hixon and J. C. Hart, *contra.*

Simmons, Justice.

The main ground relied on by counsel for the plaintiff in error for reversal of the judgment of the trial judge in refusing to grant a new trial, is the 3d ground of the motion, which is as follows:

Error in charging as follows: "If Murden got on defendant's train at Robinson, announcing to the conductor his intention to go to Augusta, and if in conversation between the conductor and Mr. Murden the conductor told Mr. Murden that if he, Murden, would pay four cents a mile to Crawfordville and there get off the train and get back again, then he, the conductor, would charge him only three cents a mile from there to Augusta, and if Murden did these things, then the conductor had no right to charge him more than three cents a mile from Crawfordville to Augusta." The error assigned as to this charge is, that the conductor being the agent of the railroad, it was beyond the scope of his agency to make any such agreement with the passenger, especially as the conductor showed the passenger the rule-book. Murden, the passenger, testified that there was such an agreement made, and he relied and acted upon it. The conductor denied this. The jury found by its verdict that such an agreement was made between the conductor and the passenger. We think that where the passenger got aboard the train at a flag-station for the purpose of going to Augusta, and there was a dispute between him and the conductor as to the proper rate to be charged, and the conductor informed him that he could ride at four cents a mile to the next office where tickets were sold, and could get off the train there and board it again, and might ride the rest of the way for three cents a mile, and the pas-

senger agreed to this and paid the four cents a mile to the next station, got off the train for the purpose of procuring a ticket and could not do so because the ticket-office was closed, and then boarded the train again for the purpose of continuing his journey, and tendered the conductor three cents a mile, the conductor had no legal right to put him off the train because he refused to pay four cents a mile. The passenger had a right to rely upon the statement of the conductor, and if he acted upon this agreement and partly performed it, the conductor could not put him off the train, although his instructions were to charge four cents a mile. The passenger is not presumed to know the private or secret rules given by the company to its conductors, but has a right to rely upon their statement as to what the rules are, in contracting with them. But it is said in reply to this, that the passenger knew that the conductor had no authority to make such an agreement, because the conductor showed the passenger his rule-book. The rule shown to the passenger, as it appears in the record, is as follows:

"Georgia Railroad Commission Rule. Number 9 of the rules governing the transportation of passengers:

"The regulation of the railroads as to passengers without tickets is a matter of police, with which the commission will only interfere upon complaint of abuse. An extra charge of more than one cent per mile, full fare, or one half cent, half fare, is regarded as excessive, unless such extra charge would fall below the minimum above given"

The two other rules of the State railroad commission set out in the record do not appear to have been shown to the plaintiff, and are of a date subsequent to the bringing of this suit.

We do not think this rule put the passenger upon notice that the conductor had no right to make the agreement, (1) because it does not appear that it is a

rule of the defendant company, but appears to be a circular issued by the railroad commission of the State to put the railroads upon notice that an extra charge of more than one cent per mile full fare is regarded as excessive, unless "such extra charge would fall below the minimum above given." What the minimum above given was or means, we do not know from this record; nor does it appear that the passenger knew. (2) Taking it to be a rule of the company, it does not show that the conductor had no right to make such an agreement with the passengers. It did not specify that when a passenger got on at a flag-station, he could not pay four cents a mile to a ticket-station and there buy a ticket for three cents a mile; it simply declares that more than one cent a mile would be excessive if the passenger had no ticket. It appears also from the evidence that the conductor said that if this passenger had got on at Crawfordville, a ticket-station, he would only have charged him three cents a mile, although he had no ticket. Unless there are other rules than the one in this record, we see no reason why a passenger, without any agreement, could not pay his fare from a flag-station to a ticket-station, and then buy a ticket and travel for the reduced fare ; and if the rule was that the ticket-agent was not required to be at the ticket-office at the time the train passed, and passengers could travel without a ticket, from that office, for three cents a mile, we think this passenger could pay his way to the first ticket-office, and if he failed to get a ticket by reason of the office being closed, he could again board the train and pass for three cents a mile.

There being no error in this charge, under the facts of the case, and the evidence being sufficient to warrant the verdict, the judgment is                    *Affirmed.*